*J. M. Pitner* and *Samuel H. Sibley,* for defendants.

---

## SOUTHERN RAILWAY COMPANY *v.* WILLIAMS.

1. Where a passenger upon a train of a railway company is asleep upon reaching the destination called for by his ticket, and is awakened by the conductor at a station further on, where the passenger expresses a desire to continue his journey until the train meets the next train going in the direction of his original destination, and offers to pay his fare therefor, it is not a condition precedent to continuing his journey that he tender unpaid fare for the distance already traveled, in the absence of a demand therefor by the conductor; and if in these circumstances, and with no other sufficient reason therefor, the conductor eject him from the train, the railway company is liable in damages.

2. Where the trial judge in his charge to the jury stated correctly and clearly the rule as to the measure of damages recoverable for pain and suffering, and in connection therewith, and closely following, used the expression that the "measure" of damages is a question for the jury, it is manifest that the court meant the "amount," and such expression was not harmful.

3. There is no merit in the other assignments of error.

NOVEMBER 18, 1916.

Action for damages. Before Judge Brand. Gwinnett superior court. August 26, 1915.

T. M. Williams brought suit against the railway company for damages from personal injuries. The case was tried, and the jury rendered a verdict for the plaintiff for $750. The railway company made a motion for a new trial, which was overruled, and it excepted. Among other things, the plaintiff alleged as follows: On a day named he purchased from the defendant company a first-class ticket in Atlanta, Ga., from that point to Duluth, on its line

cf railway. At 8.45 p. m. he boarded the defendant's train to go to Duluth. The conductor took up his ticket. The plaintiff was tired, and soon after boarding the train he fell asleep. When the train reached Duluth he was still asleep, and did not know that he had reached his destination. For this reason he remained on the train, and when Buford was reached the conductor awoke him and told him that he had arrived at his station. The plaintiff left the train, and when he had stepped upon the ground he saw that he was at Buford instead of Duluth. Not desiring to remain in Buford for the night, in an emergency, he determined to board the train and continue the journey until he could reach Gainesville, or some other point, to meet the next train returning to Duluth. He boarded the train while it was standing, and requested the conductor to carry him thereon until he could meet the next train returning to Duluth, but the conductor refused to comply with his request; and the plaintiff then offered to pay the conductor the necessary fare on the train until he could reach the next train returning to Duluth, which was refused. The conductor became angry, cursed and abused the plaintiff, and called a policeman of the town to eject him from the train. While the plaintiff was standing on the platform, the policeman seized him by the arm, giving him a terrific jerk. As he did so the conductor pushed and kicked the plaintiff from the platform and landed him on the ground. As the plaintiff struck the ground, the policeman hit him over the head with a pistol, cutting his head, causing the blood to flow freely, and causing him intense pain and suffering. He was able and willing to pay his fare, not only from Duluth to Buford, but also from Buford on to the point to which he wished to continue his journey on the train; and "he offered to pay said fare." He contended that he was not a trespasser; that his ejection from the train was wrongful, and a breach of duty by the railway company as a common carrier; that the refusal of the conductor to allow him to pay his fare was also a breach of duty on the part of the company; and that the manner in which he was ejected was wrongful and unlawful, and caused him much physical pain and suffering and much mental pain and anguish, and humiliated him in the presence of his fellow passengers. The defendant admitted the jurisdiction of the court, and that it had damaged the plaintiff.

*Dobbs & Wisdom, D. M. Byrd, John J. & Roy M. Strickland,* and *Blanton Fortson,* for plaintiff in error.

*O. A. Nix* and *I. L. Oakes,* contra.

GILBERT, J. (After stating the foregoing facts.)

1. The fourth ground of the amended motion for a new trial complains that the court refused a request to charge the jury the following: "If you believe from the evidence that the plaintiff, Williams, bought a ticket to Duluth, and that the train stopped at Duluth a sufficient length of time for passengers to get off, and that the station was called, it was the duty of Williams to get off. If you further believe that Williams did not get off at Duluth, but went on to Buford and there alighted without paying his fare from Duluth to Buford, then I charge you that Williams could not require the conductor to permit him to get back on that train until he paid or tendered his fare from Duluth to Buford, and from Buford to the point he desired to go." There was evidence to show that the plaintiff was asleep upon reaching Duluth, the point of his destination. Upon reaching Buford he was awakened, and given an opportunity to get off. Realizing that he was not at his station, and it being late at night, he determined to continue his journey until he met the next train returning toward Duluth. The plaintiff had the money in his pocket, and offered to pay his fare to the conductor from Buford until he could meet the returning train, and offered to pay it from where he might meet such train back to Duluth. Though conflicting on these points, there is evidence to show that the conductor peremptorily refused to grant the plaintiff passage on the train upon any condition; but, calling in the aid of a town policeman, with curses and kicks, abusive language and blows, the plaintiff was forcibly expelled from the train; and that he bled profusely, suffering much physical pain and mental anguish. There is no evidence to show that the conductor made any demand upon the plaintiff that he pay his fare from Duluth to Buford before he could ride further on the train. The conductor himself testified: "He did not pay his fare from Duluth to Buford. Nobody asked him for anything." The trial judge states, in a note to this ground of the motion, that at no time during the trial was it contended that the plaintiff could not recover because he had not paid his fare from Duluth to Buford, and that the record shows that no demand

was made by the conductor, as a condition precedent, that the plaintiff pay fare from Duluth to Buford before he could ride further. Counsel for the plaintiff in error rely upon the cases of *Coyle* v. *Southern Ry. Co.,* 112 *Ga.* 121 (37 S. E. 163), and *Wilson* v. *Southern Ry. Co.,* 143 *Ga.* 189 (84 S. E. 445). An examination of these cases will show quite a different state of facts from those in the present case. In neither of these cases was the passenger asleep upon reaching his destination, and in both of them a demand was made by the proper official of the company for back-fare. In the present case the conductor made no demand for back-fare, and therefore no tender on the part of the plaintiff was necessary. It follows that the judge did not err in refusing the request to charge contained in the fourth ground of the amended motion.

2. The fifth ground of the amended motion for a new trial complains of the following charge of the court: "If you believe from all the evidence in the case that the plaintiff, Williams, under the rules hereinafter stated and under the evidence submitted to you, was illegally ejected or put off the train or the platform of said train, then I charge you that this illegal ejectment is an act for which damages are recoverable. The measure of damages is a question for the jury." An examination of the preceding paragraph in the charge of the court shows that he was here charging the jury on the question of the measure of damages recoverable for pain and suffering, and that he stated to them that the law furnished "no standard by which to measure the amount, except the enlightened consciences of impartial jurors." It is clear to this court that the jury understood the correct principle of law as charged by the judge, and that no harm was done to the railway company by the use of the word "measure" in the last sentence of the excerpt quoted, where it is manifest from the context that the court mean "amount." *Atlanta, Knoxville & Northern Ry. Co.* v. *Bryant,* 110 *Ga.* 247 (34 S. E. 350).

Counsel for the plaintiff in error contend that the court should have charged that the railway company had a right to refuse passage to the plaintiff, because of his condition. There was no request for a charge of this character; and if there had been, there was no evidence to show that the conductor refused the plaintiff passage on account of his condition. Therefore there was

no evidence to authorize such a charge. As above stated, the evidence of the conductor was that the plaintiff "did not pay his fare from Duluth to Buford. Nobody asked him for anything." Later the conductor testified that he said to the plaintiff, at Buford, "You can't go on this train without paying your fare," and "I told him we couldn't take him without paying his fare." The policeman testified that when the plaintiff at Buford expressed a determination to continue his journey, the conductor told the plaintiff that "he would be glad to carry him if he would pay his fare." In the light of the evidence, the trial court did not err in charging the jury at different times, in effect, that the plaintiff had no right to ride further on the train "without paying or offering to pay the fare demanded of him by the conductor."

There was no merit in any of the assignments of error. The evidence supported the verdict, and it was not excessive.

*Judgment affirmed. All the Justices concur.*